# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**DEBBIE ROBERTS**                                                       **PLAINTIFF**

**VS.**                      No. 3:20-cv-00120 PSH

**ANDREW SAUL, Commissioner,**
    **Social Security Administration**                                 **DEFENDANT**

## ORDER

Plaintiff Debbie Roberts ("Roberts"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Saul") to deny her claim for Disability Insurance benefits ("DIB"), contends the Administrative Law Judge ("ALJ") improperly considered the opinions of treating provider Dr. Craig McDaniel ("McDaniel") provided in March 2012 and October 2016. Roberts, who was born December 27, 1968, claims she is unable to work because of the combined effects of herniated and bulging discs in her lumbar spine, degenerative disc disease, a Chiari I malformation status post decompression, fibromyalgia, arthritis, GERD, carpal tunnel syndrome status post bilateral release, severe obstructive sleep apnea, depressive disorder NOS, and anxiety disorder NOS.

***Background:*** Four administrative hearings have occurred in this case,

beginning in 2013 and concluding in July 2019. Following the first administrative hearing, the ALJ denied Roberts' claim and found she could perform sedentary work but was limited to only occasional overhead reaching. After Roberts sought judicial review, the Commissioner moved to remand due to a conflict between vocational expert testimony and the *Dictionary of Occupational Titles*. The claim was remanded, and a second administrative hearing was held on November 28, 2016. The ALJ found that Roberts was limited to sedentary work, and there were jobs she could perform at her reduced capacity. The Appeals Council remanded the case for further evaluation of opinion evidence.

The third administrative hearing was held on July 11, 2018. The ALJ again found that Roberts had the RFC for sedentary work. The Appeals Council again remanded Roberts' claim to further consider the use of the higher age category pertaining to 50 years and older, and also to consider McDaniel's treating source opinions that Roberts was limited to less than sedentary work. A fourth administrative hearing was held on July 11, 2019. This time, the ALJ found that Roberts could perform light work. Roberts has appealed from this finding and seeks judicial review of it.

***Fourth Administrative Hearing*:** Roberts and vocational expert Dianne Smith ("Smith") testified at the fourth hearing, on July 11, 2019. The ALJ posed a

hypothetical question to Smith, asking if a worker of Roberts' age and experience with the ability to perform light work with restrictions could perform her past relevant work. Smith opined such a worker could not perform the past work but could perform other jobs in the national economy. (Tr. 846-869).

***ALJ's Opinion Following Fourth Hearing:*** The ALJ determined that the period under consideration was from April 1, 2013 through December 31, 2018. Despite a number of severe impairments,[1] the ALJ found Roberts had the residual functional capacity ("RFC") to perform light work except that she could: occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; occasionally be exposed to extreme heat, extreme cold, and vibration; frequently handle; never climb ladders, ropes, or scaffolds; never be exposed to unprotected heights or dangerous moving machinery, and never operate a motor vehicle at work; understand and remember simple instructions; sustain attention and concentration to complete simple tasks with regular breaks every two hours; interact as needed with supervisors and coworkers and have routine, superficial interaction with the public; and adapt to routine work conditions and occasional work place changes. The ALJ

---

[1] Severe impairments found were lumbar degenerative changes; arthritis; carpal tunnel syndrome; fibromyalgia; history of Chiari I malformation with hydrocephalus and repair; headaches; hypertension with palpitations and history of syncope; thyroid disorder; depression; and anxiety.

3

found that Roberts was not able to perform her past relevant work, but that she could perform other work in the economy such as routing clerk, press operator II, and collate operator.[2]

The ALJ considered the opinions of Roberts' treating physician, McDaniel, and found that they were "not ... entirely persuasive," making the following specific findings:

> The claimant's treating physician, Dr. Craig McDaniel, provided statements concerning the claimant's impairments. His opinions have been given consideration and are not found to be entirely persuasive. On March 1, 2012, the claimant asked Dr. McDaniel if he felt she was a candidate for disability. She stated that she was miserable physically when working. However, she denied chest pain, shortness of breath, headaches, syncope or seizures. Upon examination, she was ambulatory and moved all extremities well. She was also neurologically intact, her lungs were clear and her heart had a regular rate and rhythm. Dr. McDaniel responded that based upon her diagnoses, she was a candidate for disability and instructed her on how to apply for disability. He chose to keep her off work a few weeks in order for her to get a neurological consultation. Based upon her subjective report, he stated that prolonged standing and walking would make it difficult to work. However, the task of finding disability is assigned solely to the discretion of the Commissioner. Medical opinions are relevant in order to help determine the severity of the claimant's mental or physical limitations.
>
> On October 11, 2016, the claimant asked Dr. McDaniel to complete

---

[2] The ALJ summarized the medical treatment received by Roberts from March 1, 2012 through March 8, 2019. Roberts and Saul adopted the ALJ's thorough summary of the medical evidence in their briefs. The summary will not be repeated in this order. Docket entry no. 15, page 5, and docket entry no. 19, page 3.

some forms for her in anticipation of a Social Security hearing. He agreed to complete the disability forms based on his interview with her that day. He noted she suffered with chronic muscle and joint pain, was seeing a cardiologist for SVT and chest pain, and had a history of Chiari malformation with associated memory loss and concentration problems. The claimant denied having chest pain, dyspnea, fever, abdominal pain, weakness, skin change, or bowel/bladder function change. She complained of pain and stiffness in her shoulders, knees and hips. A physical examination showed that she was ambulatory with no distress and there was a normal ENT examination, no edema, regular rate and rhythm, clear lungs, and good pulses. Based upon examinations and symptoms, Dr. McDaniel diagnosed her with fibromyalgia, osteoarthritis, Chiari malformation, supraventricular tachycardia, and sleep apnea.

Dr. McDaniel opined the claimant could perform work at the sedentary exertional level and could stand, walk and/or sit two hours in an eight-hour workday. He opined that she could stand/walk one hour continuously without a break and sit up to two hours continuously without a break. He opined she would require frequent rest breaks, longer than normal rest breaks and an opportunity to shift positions at will. He opined that she could not reach in all directions, including overhead, but could frequently finger and handle objects. Dr. McDaniel contended that medication side effects would affect her ability to work, but failed to list the medications or any side effects. He also opined she would be absent from work more than three days per month. However, Dr. McDaniel gave vague responses in listing objective medical findings supporting the limitations and the form he completed was a checkbox form with no significant explanation of the limitations assessed. Furthermore, the limitations he assessed are not consistent with the medical record. On March 8, 2019, a progress note from NEA Baptist reported physical exam showed that her BMI was 36.2, but her eyes, neck, cardiovascular system, and abdomen were all normal. She had normal range of motion in her neck and musculoskeletal system, and she had normal reflexes. She also had a normal mood and affect, and her behavior, judgment, and thought content was normal. At that time, Dr. Trent Lamb prescribed Sertraline and no other medications.

5

On June 11, 2012, Suzanne Gibbard, Ph.D., performed a consultative medical examination. The claimant reported symptoms of crying spells, low energy, loss of interest, sadness, tearfulness, difficulty making decisions, fatigue and anxiety. She reported that she had never received inpatient or outpatient mental health care and that she was still employed with Sherwin Williams, but was on temporary leave. The claimant acknowledged being able to shop, cook, clean and manage her financial affairs. She also reported that she was independent in taking care of her personal needs. Dr. Gibbard diagnosed the claimant with depression and anxiety. She determined the claimant had the ability to communicate in an intelligible and socially appropriate manner and had the cognitive ability to perform work-related tasks. She reported that the claimant might have problems with the capacity to sustain completion of tasks and completing them in a timely manner because of anxiety, depression, and memory deficits. The undersigned gives some weight to Dr. Gibbard's opinion to the extent that it is consistent with the residual functional capacity.

(Tr. 741-742).

***Roberts' claim of error:*** Roberts claims error in the ALJ's finding that McDaniel's 2012 and 2016 opinions were not persuasive, and argues that the opinions should have been given controlling weight.[3]

---

[3] After Roberts first applied for benefits, new regulations were adopted by the Social Security Administration regarding treatment of opinions provided by treating physicians. Because the application here pre-dates March 27, 2017, when the new regulations became effective, they do not apply. Instead, prior case law controls, providing that the opinion of a treating physician is given deference and "is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003).

### *McDaniel's 2012 Opinion:*

The pertinent portion of McDaniel's 2012 opinion is that Roberts would struggle with prolonged standing and walking. This opinion is contrary to the ALJ's RFC determination that Roberts is capable of standing/walking at least six hours in a normal workday. McDaniel's opinion is controlling if it satisfies two requirements: (1) the opinion is supported by acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with other substantial evidence in the record.

With regard to the first prong, the ALJ did not specifically find whether McDaniel's opinion was supported by acceptable clinical and laboratory diagnostic techniques. The ALJ, in fact, was silent on this issue. The medical record, however, is not silent, and supports a finding that McDaniel's opinion is supported by acceptable clinical and laboratory diagnostic techniques. McDaniel initially diagnosed Roberts with a knee sprain in October 2010. (Tr. 296-297). McDaniel found Roberts to have normal range of motion "but painful with regard to her knees, hips, and shoulders" in May 2011. (Tr. 282-283). Other providers also examined Roberts in the time prior to McDaniel's 2012 opinion. Dr. Spencer Guinn ("Guinn"), an orthopedist, diagnosed right knee pain and swelling in March and April 2011. (Tr. 242-245). Dr. Leslie McCasland ("McCasland"), a rheumatologist, saw Roberts in

June 2011 on referral from Guinn. McCasland diagnosed Roberts with fibromyalgia, possible Morton's neuroma, carpal tunnel symptoms bilaterally, knee pain with history of effusion on the right knee, and left heel spur and mid-foot pain. McCasland's exam included an x-ray of Roberts' left knee. (Tr. 257-261). Dr. Bing Behrens ("Behrens"), a neurologist, saw Roberts in September 2011. Roberts complained of neck, shoulder, arm, hand, and leg pain since February 2011. Behrens diagnosed her with chronic neck and bilateral shoulder pain, numbness in both hands, with a small disc protrusion at C4-5 with no spinal canal or neuroforaminal stenosis, excessive daytime sleepiness, and fibromyalgia. (Tr. 384-394). When seen again by Behrens in January 2012, he assessed her with leg pain/spasms and difficulty with walking. (Tr. 352-354). Behrens referred Roberts to Dr. Robert Abraham ("Abraham"), a neurosurgeon, for evaluation of her Chiari malformation. Abraham saw Roberts in September 2011 and diagnosed her with Chiari I malformation, depression, and fibromyalgia. His examination revealed uncomfortable rotation in the cervical spine, and painful flexion in the lumbar spine. (Tr. 379-383). Four weeks after her surgery for the Chiari malformation, in December 2011, Roberts returned to Abraham and complained of bilateral leg pain and difficulty walking. Abraham assessed her with fibromyalgia and depression and directed that she could return to work. (355-356).

8

Because the ALJ did not evaluate whether McDaniel's opinions were supported by acceptable clinical and laboratory diagnostic techniques, it appears the ALJ found the opinions not entirely persuasive because they were inconsistent with other substantial evidence in the record, specifically citing McDaniel's own examination notes. The ALJ noted McDaniel found no chest pain, shortness of breath, headaches, syncope, or seizures, and recorded Roberts was ambulatory and moved all her extremities well. These findings do not conflict with McDaniel's opinion that Roberts was unable to perform prolonged standing and walking. Roberts may well have been ambulatory without chest pain, etc., yet unable to stand and walk for prolonged periods. The ALJ also faulted McDaniel's opinion for being based only upon Roberts' subjective report. The record belies this assertion. Finally, the ALJ found that McDaniel's opinion intrudes on the ALJ's turf because the ultimate decision on disability is for the ALJ, not the treating physician. This contention is correct but inapplicable because McDaniel did not offer his opinion on disability as definitive. Rather, he opined on Roberts' abilities.

Under prior law, as cited herein, there are valid ways for an ALJ to discount a treating physician's opinion. Here, the ALJ found McDaniel's 2012 opinion not persuasive but did not do so for valid reasons.

***McDaniel's 2016 Opinion:***

In his 2016 Medical Source Statement, McDaniel opined that Roberts could stand and walk about two hours in a workday, and could sit for about two hours. He also found she could lift and carry ten pounds occasionally, and lift and carry less than ten pounds frequently. McDaniel listed Roberts' physical problems as fibromyalgia and osteoarthritis, Chiari malformation, degenerative lumbar disorder, sleep apnea, and supraventricular tachycardia. McDaniel indicated that side effects from medication would affect Roberts' ability to work, but he did not list any specific medications or the side effects. Finally, McDaniel listed the following objective medical findings which supported his opinion: "She's had sleep study, brain imaging, cardiovascular testing, MRI lumbar, & history of brain surgery." (Tr. 1492-1494).

As with the 2012 opinion, McDaniel's 2016 opinion is controlling if it satisfies two requirements: (1) the opinion is supported by acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with other substantial evidence in the record. Similar to his evaluation of McDaniel's 2012 opinion, the ALJ did not explicitly find whether McDaniel's opinion was supported by acceptable clinical and laboratory diagnostic techniques. Instead, the ALJ criticized McDaniel for providing vague responses in listing his objective medical findings.

A review of the record reflects clinical findings from McDaniel and other

providers which support the standing/walking limitations in the 2016 opinion. McDaniel's April and June 2016 examinations showed spasm and painful lumbar range of motion. (Tr. 1482, 1485). The Court has previously recited the findings of Guinn, McCasland, Behrens, and Abraham, all of which pre-dated and are consistent with McDaniel's 2016 opinion. The ALJ did not address these clinical findings, nor did he address consistent clinical findings made after McDaniel's 2016 opinion.[4] And the ALJ cited no laboratory diagnostic findings that were contrary to McDaniel's opinion. The ALJ is charged with giving good reasons, "with some specificity," for discounting a treating physician's opinion. *Walker v. Commissioner, Social Security Administration*, 911 F.3d 550, 553 (8th Cir. 2018). In the absence of some mention and meaningful discussion of these consistent clinical findings, the ALJ erred in discounting McDaniel's opinion. The ALJ did not demonstrate McDaniel's opinion was unsupported by clinical findings or laboratory diagnostic techniques.

The ALJ also faulted McDaniel's 2016 opinion as inconsistent with other

---

[4] Roberts points to a lumbar spine CT, cervical spine CT, an MRI of her lumbar spine, an MRI of her cervical spine, and a nerve conduction study as containing diagnostic results consistent with McDaniel's opinion. All of these tests were conducted in 2017, after McDaniel offered his opinions. In addition, Dr. Trent Lamb ("Lamb") examined Roberts in August 2018. Although Lamb's examination found normal range of musculoskeletal motion, he diagnosed Roberts with fibromyalgia, prescribed Flexeril for use nightly as needed for muscle spasms, and issued her a parking sticker "due to arthritic hip pain causing problems with walking distance." (Tr. 1867-1868).

medical evidence. The lone example cited by the ALJ as inconsistent is a March 8, 2019, progress note from Lamb. (Tr. 1896-1897). That progress note listed normal findings, such as normal eyes, neck, cardiovascular system, and abdomen, as well as normal range of motion in her neck and musculoskeletal system, and normal reflexes. Further, the record noted a normal mood and affect, and normal behavior, judgment, and thought content. (Tr. 742).

The ALJ erred in discounting McDaniel's 2016 opinion based upon Lamb's 2019 progress note for three reasons.[5] First, while Lamb's normal findings paint a general picture of Roberts, these findings do not specifically address the key issue – whether Roberts can satisfy the standing/walking requirements of light work. Since the Lamb progress note does not deal with Roberts' standing/walking abilities, the ALJ found "an inconsistency where none appears to exist." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020). Second, Lamb's normal findings are not without contradiction in his own progress notes. Lamb previously prescribed medication to deal with nightly muscle spasms and issued a handicap parking sticker due to arthritic pain causing problems with walking distances. (Tr. 1867-1868). Lamb's normal findings cannot amount to inconsistent medical evidence when other findings in the

---

[5] The Lamb progress note from April 2019 was four months after the end of the relevant time period for disability purposes.

same progress notes are internally inconsistent. Lamb's progress note is ambivalent on the key issue of Roberts' tolerance for standing/walking, and the ALJ erred in relying so heavily on the note. Finally, McDaniel's opinion is controlling so long the opinion is not inconsistent with other substantial evidence in the record. Here, Lamb's single progress note does not amount to other *substantial evidence* in the record. The medical records are voluminous, and the Lamb note is overwhelmingly outweighed by the other medical evidence. This is not an instance where McDaniel's 2016 opinion stood apart from his own treatment notes and the findings of other providers. *See Leckenby v. Astrue*, 487 F.3d 626, 633 (8th Cir. 2007) (multiple providers concurred with the limitations listed by the treating physician). The ALJ failed to provide "sufficiently specific" examples of inconsistencies in the record to support his rejection of McDaniel's 2016 opinion.[6] *Lucus, supra,* at 1069.

**Conclusion**

The ALJ erred in evaluating McDaniel's 2012 and 2016 opinions. Under the prevailing legal standard at the time, McDaniel's opinions were entitled to deference and were controlling. As a result, Roberts could not perform light work, the level of

---

[6] The ALJ also faulted McDaniel's 2016 opinion because he failed to indicate which specific medications were producing Roberts' side effects, and because McDaniel's opinion was in the form of a checklist. While checklists are not ideal, and the specific medications causing side effects would have been helpful, neither of these contentions cure the foundational errors in considering McDaniel's opinion outlined herein.

13

work designated by the ALJ. Since Roberts was 50 years old on December 27, 2018, and unable to perform light work, she was disabled under the relevant guidelines. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14. While it is clear that she was entitled to benefits upon turning 50 years old, a question still exists regarding whether she was disabled prior to that date. As previously noted, four administrative hearings have occurred in this case. After the first three hearings the ALJ found Roberts capable of performing sedentary work with restrictions. It may well be that Roberts could perform work in the national economy until she reached the age of 50. That narrow question, whether Roberts was disabled prior to December 27, 2018, is appropriately determined by the ALJ, and the case is remanded to rule on that issue.

The ALJ's decision is reversed, and this case is remanded for further proceedings consistent with this Order. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 19th day of May, 2021.

_____
UNITED STATES MAGISTRATE JUDGE